**HOWARD A. MILLER, ESQ. (HM-5662)**
**Suite 310, 15 MAIN STREET**
**HACKENSACK, NJ  07601-7027**
**Telephone:    (201) 530-9100**
**Facsimile:    (201) 530-9200**
**Email:        hamesq@hamesq.net**
**Attorney for Plaintiffs Aaron and Laurie Schwinger**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AARON and LAURIE SCHWINGER, Husband and Wife;**<br>**Plaintiffs;** | **Case № _____** |
| **v.** | **COMPLAINT AND JURY DEMAND** |
| **AMERICAN DIESEL & GAS, INC; MORRIS LEWITTER, ABBOTT W. LIGHTER, JARED S. LIGHTER, ANTHONY ANTHON, GEORGE BURMEISTER, HOWARD TRACHTENBERG, WILLIAM HOFFMAN and JOHN DOE,**<br><br>**Defendants.** | |

Plaintiffs Aaron and Laurie Schwinger, Husband and Wife, residing in the City of Hackensack, County of  Bergen, and State of New Jersey, complaining of defendants American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter, alleges as follows:

**The Parties**

1.    Aaron and Laurie Schwinger, are, as tenants in common, stockholders of record in defendant American Diesel & Gas, Inc.  Henceforth, they will be referred to collectively in the singular.

2.    American Diesel & Gas, Inc. ("ADG" or "Company") is a company formed on or about the

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

24th of October, 2001, under the laws of the State of Florida.  It maintains its present headquarters at 4800 North Federal Highway, Suite 301A Boca Raton, Florida 33431-5188.

3.    Mr. Morris Lewitter ("Lewitter") is the President, Chief Executive Officer and Chief Financial Officer of ADG.  He is sued in both his professional and personal capacity.

4.    Mr. Abbott W. Lighter ("A. Lighter") is the Vice President of Marketing for ADG.  He is sued in both his professional and personal capacity.

5.    Jared S. Lighter serves ("J. Lighter") is the Vice President of Sales for ADG.  He is sued in both his professional and personal capacity.

6.    Anthony Anthon ("Anthon") is a former President and Director of ADG.  He is sued in both his professional and personal capacity.

7.    George Burmeister ("Burmeister") is a former Vice President and Director of ADG.  He is sued in both his professional and personal capacity.

8.    Howard Trachtenberg ("Trachtenberg") is a former Vice President and Director of ADG. He is sued in both his professional and personal capacity.

9.    William Hoffman ("Hoffman") is a former Director of ADG.  He is sued in both his professional and personal capacity.

10.    Lewitter, A. Lighter, J. Ligther, Anthon, Burmeister, Trachtenberg, and Hoffman are referred to collectively as the "Directors."

11.    John Doe is a person or persons who may be liable to the plaintiff but whose identity or identities are unknown to the plaintiff at this time.

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

**Jurisdiction and Venue**

12.  Diversity jurisdiction is extant pursuant 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and complete diversity of citizenship exists between the plaintiff and defendants.  Subject matter jurisdiction is also extant as violations of the Securities Act of 1933 are allged.  This Court also has jurisdiction to hear and adjudge matters pleaded under state laws under the doctrine of supplemental jurisdiction.

13.  Venue is based on the 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claim occurred in the judicial district of the United States District Court for the District of New Jersey.  Venue is also based on 28 U.S.C. § 1391(c) in that ADG and its Directors purport to do business nationwide and in India and holds out its Chief Financial Office and Chief Executive to be a ". . . Certified Public Accountant . . . licensed to practice in both the States of New York and New Jersey."

**General Allegations**

14.  Upon its creation, ADG was authorized to issue 10,000 shares of common stock.

15.  On or about the 22nd of November, 2003, the Directors Amended ADG's Articles of Incorporation authorizing ADG to issue 20,000 shares of common stock.

16.  On or about the 10th of October, 2006, the Directors filed an amendment to ADG's Articles of Incorporation ". . . to increase the stock it is authorized to issue from 20,000 shares of

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

common stock with a par value of $.10 per share to 10,000,000 shares."

17.     On or about the fourth quarter of 2006, the Directors prepared for general circulation and

distribution a "Subscription Agreement" in which "the Purchaser" could buy ". . . from

American Diesel & Gas, Inc. (the "Company"). . . 1236.1 shares ("Shares") of the

Company's common stock totaling $25,000.00 (the "Purchase Price")."

18.     Annexed to the Subscription Agreement as its Exhibit A and made a part thereof was a

"Stockholder's Agreement" which "Concurrently with the Purchaser's execution and

delivery of this Agreement and as a condition precedent to becoming a shareholder of the

Company, the Purchaser agrees to take the Shares subject to the Stockholder's Agreement,

dated July 1, 2002, as Amended . . ." and in which ADG had ". . . an authorized

capitalization of twenty thousand (20,000) shares of common stock, $.10 per share par

value."

19.     ADG purported then and continues to purport now that it has the rights to a "valuable"

patented technology called Q-Shield™:

Q-Shield™ is a patented technology that significantly reduces the consumption of
diesel fuel or gasoline in internal combustion engines. Q-Shield™ technology
employs space-age Thermal Insulators to key parts of the engine. It does not invade
any engine components. Q-Shield™ is fitted to the total air intake system:
compressor, turbocharger, exhaust manifold, and intercooler. This total shielding
produces a more complete combustion rate. Q-Shield™ operates in engine types with
or without intercoolers.

20.     In truth, however, the Q-Shield™ technology is of dubious value and the Directors knew,

or should have known, that there is no viable market for the Q-Shield™ technology.

4

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### Complaint
**Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter**

21.    The Directors have raised an unknown amount of money by soliciting unsuspecting persons into investing money into ADG with false assurances of their being able to develop a market for the Q-Shield™ technology.

22.    Sometime in November of 2006, Lewitter, in conversations with Aaron Schwinger in phone calls Lewitter made to Aaron Schwinger, Lewitter induced Schwinger into buying a block of 1236.1 shares of the Company's common stock for $25,000.00, for the purpose of getting Schwinger's money for ADG and its Directors and not for any legitimate business purpose, by saying things like:

    a.    The year 2007 would be the "break out year" for ADG, as the price of gas was going up and the savings of its Q-Shield™ technology made "couldn't miss."

    b.    In a test by the United States Army on a fleet of its HUMVEES,  Q-Shield™ was found to have decreased HUMVEE fuel consumption and that a contract to outfit the United States Military's fleet of HUMVEES was "imminent."

    c.    Not only was the United States Military going to outfit its fleet of HUMVEES, but ADG had developed a contact in the India who had contacts with the Indian military and thus ADG had, or was going to, establish a subsidiary India to ". . . take care of that market."

23.    ADG and its Directors asserted in a letter dated the 4th of January, 2007, to "Dear Stockholder,"   and signed "Morris Lewitter, President and CEO," that:

The New Year has started and we have high hopes for 2007.  You will be kept abreast of the major events as they enfold.  We expect to sign contracts with two major original equipment manufacturers this month.  Please find enclosed your new stock certificate which reflects the 10 for 1 stock split.  Best wishes for the New Year."

24.    In a letter "To the Stockholders: American Diesel and Gas, Inc." and dated February 1, 2008

5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

and signed "American Diesel & Gas, Inc.," it was explained that "Management has

internally compiled the accompanying statement of assets and liabilities of American Diesel

& Gas, Inc. (an S Corporation) as of December 31, 2007 and 2006," but it included

boilerplate language not normally used in external financial disclosures:

> **Management has elected to omit substantially all of the disclosures required by generally accepted accounting principles.  If the omitted disclosures were included they might influence the user's conclusions about the Company's financial position, results of operations, and cash flows.**  Accordingly, these financial statements are not designed for those who are not informed about such matters. [**emphasis added**]

25.   With cover letter dated the 20th of February, 2008, ADG provided its Stockholders with its

financial statements ". . . for the years ended December 31st, 2007 and 2006."  The letter

explained:

> We began operations on October 22, 2001, from which date no salaries have been paid to officers, with the exception of our Vice President of Sales.  However, we did accrue token salaries for the other officers, the liability of which was reflected as a currently liability and an increase in the accumulated deficit account.  Since we continually expected to become profitable, we did not think this would be a big deal.  However, the liability has increased significantly, so that by December 31, 2007, would have approximated $600,000.  Therefore the Board of Directors has decided to eliminate the accrual, to restate the prior years financial statements, and to determine what a reasonable payment for past services would be due the officers, at such time as the company becomes profitable.

26.   In another ADG letter dated 3rd July 2008" from signed "Morris," Morris Lewitter, Chairman

of the Board and Chief Executive Officer, it was asserted, *inter alia*:

> After a long arduous journey we are finally able to reap the rewards of our efforts.  We are poised to increase our sales significantly.  For the year 2008, we expect total sales to range between $2,500,000, on the low side, to an upside that is hard for us to estimate, because of all the unknowns.  What we do know is that our technology

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

is finally gaining recognition, which will produce ever increasing sales.

27. Then, after describing several inquiries from potential customers, Lewitter explained under

the heading "Relocation:"

In order to provide the additional space necessary to accommodate the growth we
see, we have signed a Non-Binding Letter of Intent for approximately 8,000 square
feet, 5,000 of which will be for production.  We will sign the lease, if, as and when
we have concrete evidence of the future order flow.

28. Then, in the next two paragraphs which immediately followed the one just quoted, Lewitter

asserts:

29. **Financial Needs:**  I am scheduled to meet with the Senior Planner, of the city of Deerfield
Beach, Florida, on Tuesday, to determine the financial aid the City will provide.  I would
estimate our financial needs at $500,000.
**Offer:** The Board of Directors makes the following officer to you:
● Since we are currently in need of $50,000, we will sell up to 2,500 shares at $20 per
share.
● After we have concrete evidence of future order flow, we will sell to the existing
stockholders, up to $450,000 of common stock, at a price to be determined, less a
discount of 30%.

30. Mr. Schwinger is a Certified Public Accountant and recognized ADG's letters and financial

statements raised concerns which Schwinger expressed in a letter to Lewitter dated March

10, 2008.

31. Lewitter responded in a letter dated March 20, 2008 in which he asserted, *inter alia*:

a. "The Board" decided that ". . . because of the costs involved, we would not have
outside auditors presenting annual audited statements for the Company. . . At such
time as the Company becomes profitable, we will engage outside auditors to conduct
annual audits.
b. "You [Schwinger] should be glad to know that the Company is engaged in major
activities and should substantially increase sales in the near future."

7

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### Complaint
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

32.    Each of the individual Directors' primary liability arise in that each purports to be or to have been a high-level executive and/or director of ADG during the time the things alleged occurred and knew, or should have known, that the information being disseminated to the Plaintiff was materially false and misleading.

33.    They, the Directors, singly and in concert, directly or indirectly, knowingly or recklessly engaged in acts, transactions, practices and a course of business which has given rise to each of the causes of action set forth below.

### Count 1
### Fraud

34.    Plaintiff incorporates by reference and realleges the allegations as set forth above.

35.    Schwinger believed the representations described in ¶22 to be true and relied upon each of them at the time he purchased the ADG stock.

36.    The Directors knew their claims of the potential sales of the Q-Shield™ were false and Lewitter's claims to Schwinger were false and made with intent to deceive and defraud Schwinger and to induce Schwinger to purchase ADG stock.

37.    When doing the things alleged above, the Directors knowingly and/or recklessly perpetuated a fraud upon the plaintiff to induce him to pay to ADG money to the Director's unjust enrichment and Schwinger's unfair detriment.

### Count 2
### Breach of the Covenant of Bad Faith and Fair Dealing

38.    Plaintiff incorporates by reference and realleges the allegations as set forth above.

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Complaint**
Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

39.     The Directors  statements and representations made to Schwinger concerning the potential

        sales of the Q-Shield™ were false and misleading, and Schwinger justifiably relied on such

        false statements and misrepresentations and was thereby induced to enter into the

        Subscription Agreement, and though unknown to Schwinger, the Directors knew ADG

        would never be profitable.

40.     Schwinger's purchase from the Directors of ADG stock implied in law a covenant of good

        faith and fair dealing, by which Directors agreed to take Schwinger's money for a legitimate

        business purpose.

**Count 3**
**Violation of the Securities Act**

41.     Plaintiff incorporates by reference and realleges the allegations as set forth above.

42.     When doing the things alleged above, the Directors carried out a plan, scheme and course

        of conduct which was intended to and has circumvented the rules concerning Private

        Placements and disclosures, as set forth in applicable provisions of the Securities Act (15

        USCS § 77 *et seq.*).

43.     When the Directors sold the ADG stock to Schwinger, they sold unregistered securities

        through interstate commerce in violation of the Securities Act**.**

**Count 4**
**Sale of Unregistered Securities in Violation of Florida Law**

44.     Plaintiff incorporates by reference and realleges the allegations as set forth above.

45.     Florida Statues provides that it is unlawful to sell or offer to sell securities in Florida unless

9

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### Complaint

Aaron and Laurie Schwinger, H&W  v. American Diesel & Gas, Inc; Morris Lewitter, Abbott W. Lighter, and Jared S. Lighter

by federal law.

46.     The ADG shares sold by the Directors to Schwinger were not registered with the Florida

Division of Securites pursuant to the Florida Securities Investor Protection Act.

**WHEREFORE**, Plaintiffs Aaron and Laurie Schwinger demand judgment against the

defendant corporation American Diesel & Gas, Inc.; and the natural person defendants Morris

Lewitter,  Abbott W. Lighter, Jared S. Lighter, Anthony Anthon, George Burmeister, Howard

Trachtenberg, and Willaim Hoffman, jointly and severally, for

    a.      Compensatory damages in the amount of $25,000.00;

    b.      Punitive damages;

    c.      Statutory damages;

    d.      Interest;

    e.      Costs of suit and attorney fees, and;

    f.      Such further relief as the Court deems fair, equitable and just.


### DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury.

### STATEMENT DAMAGES EXCEED $100,000.00

The matter in controversy involves damages in excess of $100,000.00.

RESPECTFULLY SUBMITTED:
HOWARD A.  MILLER, ESQ.
by: _Howard A Miller_

Howard A.  Miller, Esq. (HAM5662)
Attorney for Aaron and Laurie Schwinger

DATE: November 25, 2008

10